```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT

SHILI LIU,                        :

        Plaintiff,

v.                                :      Civ. No. 3:05cv1034 (AHN)

PHILIP E. AUSTIN, PRESIDENT
OF THE UNIVERSITY OF              :
CONNECTICUT, ET AL.,

        Defendant.                :
```

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff Shili Liu ("Liu") brings this action against defendants, the University of Connecticut ("University"), Philip E. Austin, President of the University ("Austin"), and Peter W. McFadden ("McFadden"), Interim Director of the University of Connecticut's Environmental Research Institute ("UCERI"), seeking injunctive, declaratory and equitable relief pursuant to the Due Process Clause of the Constitution and 42 U.S.C. § 1983. Currently before the court is the defendants' motion for summary judgment [doc. # 23], filed on November 8, 2006.

## FACTS

The following facts are not in dispute. The University initially hired Liu on June 30, 1993, to work at UCERI as an Academic Assistant III, a non-tenure track position. On his date of hire, Liu became a member of the American Association of University Professors, University of Connecticut chapter ("AAUP"), a union representing the interests of Liu and other instructors at the University with respect to conditions of

employment.  After the University hired Liu, it provided him with annual appointment letters that he could either reject or accept by signing the letters and returning them to the sender.[1]  Liu never filed a grievance over the appointment letters.

On June 28, 2002, Terri Brehant, Assistant Finance Director at the University, sent Liu an annual appointment letter.  The letter stated in part:

> I am pleased to inform you that you are being continued as a full-time Academic Assistant III in the Environmental Research Institute at an annual salary of $71,353.  This appointment is for the period starting July 1, 2002 through June 30, 2003.  Unless you are told otherwise in writing, you should consider June 30, 2003, as your last day of employment.  Please indicate your acceptance of the offer by signing below and returning one copy of the letter with your original signature to me as soon as possible.

Liu signed the appointment letter on July 8, 2002, next to the provision in the letter that stated: "I accept the appointment under the terms described above."

On June 3, 2003, almost a month before Liu's last day of employment pursuant to his 2002 appointment letter, McFadden wrote a letter to Liu in response to Liu's telephone call

---

[1] Liu denies that he received appointment letters every year after his initial hire date.  However, neither party disputes Liu's length of employment with the University or the fact that the University never offered him a tenure-track position or a contract with a duration of more than one year.  Hence, this fact is not material to the motion for summary judgment.  See Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995) (holding that a factual dispute among the parties will not defeat a properly supported motion for summary judgment unless there is a "genuine issue of material fact").

regarding his employment status. McFadden confirmed that Liu's last day of employment with the University was June 30, 2003. On June 6, 2003, Liu wrote a letter to McFadden, in which he stated that according to the AAUP's Collective Bargaining Agreement ("CBA") with the University, his position warranted a three-year contract rather than successive one-year appointments, and as such, the one-year appointments violated the CBA. Specifically, Liu referred McFadden to section 13.2 of the CBA, which states as follows:

> 13.2  Probationary Period for Staff not in a Tenure Track
>
>> A. Effective July 1, 1981, new staff not in a tenure track shall serve a one-year probationary period. In the event the probationary employee is dismissed before the end of his/her probationary period, he/she shall receive one month's notice or pay in lieu thereof.
>>
>> B. Following the completion of the probationary year, staff not in tenure track shall be eligible for one-year appointments up to a maximum of (5) such one-year appointments. Beginning with the seventh year, staff shall be eligible for three-year contracts. Commencing with the first three-year appointment, nonrenewal shall be grievable according to the procedures and standards of dismissal for cause and notice shall be afforded according to the schedule listed in 13.5 below.

The defendants took no further action based on Liu's letter and Liu's employment ended on June 30, 2003. Liu thereafter requested that the parties use the grievance procedure pursuant

3

to section 10.4B of the CBA to resolve the issue of whether the University violated section 13.2 when it provided Liu with a one-year appointment letter instead of a three-year contract.

In April 2005, an arbitrator from the American Arbitration Association found that the University "did not violate the collective bargaining agreement" because Liu waived his rights to a three-year contract under section 13.2 when he signed the one-year appointment letter.[2] Liu did not seek to vacate the arbitrator's award.

Following the arbitrator's finding, Liu instituted the present action against the University as well as Austin and McFadden in their individual and official capacities, alleging that they violated his rights pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment. Liu contends that the defendants deprived him of his constitutional right to due process when they failed to renew his contract with UCERI absent just cause and failed to provide him with pre-termination notice and a hearing.

---

[2] The arbitration award states in part:

> When Liu signed his contract on June 28, 2002, he agreed to waive the term in Article 13.2B, regardless of the fact that the word "waiver" was not contained in the appointment letter. . . . This conduct is imputed to the AAUP. Therefore, the University did not violate Section 13.2B of the collective bargaining agreement because the conduct of the parties with regard to the provisions of Article 20 [minimum duration of appointment in CBA shall control unless waived in writing by the AAUP and the employee] overrode, as it were, the provisions of 13.2B.

4

The defendants filed the current motion for summary judgment. They claim that Liu did not have a constitutionally protected property interest in continued employment at UCERI and even if he did, the defendants gave Liu all the process he was due.

## STANDARD

A Rule 56 motion for summary judgment may be granted if the court determines that the moving party is entitled to judgment as a matter of law because there are no genuine issues of material fact to be tried. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. See Lujan v. National Wildlife Federation, 497 U.S. 871, 883-85 (1990); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In considering a Rule 56 motion, the court's responsibility is not to resolve disputed issues of fact, but rather to assess whether there are any factual issues to be tried, while resolving all ambiguities and drawing all reasonable inferences against the

5

moving party. See Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995).

## DISCUSSION

Liu argues that the defendants terminated him without an opportunity to be heard and that unless cause existed, it had to renew his contract.[3] The defendants counter that they did not deprive Liu of a constitutionally protected property interest when they allowed his one-year appointment to expire.

A. Property Interest in Continued Employment

To determine whether the defendants violated Liu's constitutional right to due process, the court must decide (1) whether Liu had a constitutionally protected property interest in a right to continued employment at UCERI; (2) whether the defendants deprived Liu of that protected property interest; and (3) whether Liu received adequate due process before being deprived of continued employment at UCERI. Local 342, Long

---

[3] Liu does not articulate whether the defendants should have renewed his contract for one year or three years, but regardless of the duration, Liu argues that the defendants were bound to renew his contract absent cause.

6

Island Pub. Serv. Employees v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) (citing Mehta v. Surles, 905 F.2d 595, 598 (2d Cir. 1990) (per curiam)).

Liu argues that the defendants should have renewed his contract absent cause, and that when they allowed his one-year appointment to expire before providing him with notice or a right to be heard, the defendants violated his right to due process.[4]

In the context of employment, "a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause." Legg v. Dellavolpe, 228 F. Supp. 2d 51, 61 (D. Conn. 2002) (citing S & D Maintenance Co., Inc. v. Goldin, 844 F.2d 962, 967 (2d Cir. 1988)). Public employees that have tenure and those that can only be discharged "for cause" have a "constitutionally protected property interest in employment." See Harhay v. Ellington Bd. of Educ., 323 F.3d 206, 213 (2d Cir. 2003); Ciambrello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002). For a person to have a property interest in a benefit, he "'clearly must have more than an abstract need or desire' and

---

[4] Liu states that the defendants "terminated" him from his position at UCERI. According to the terms of the contract he signed, Liu's one-year appointment expired on June 30, 2003. The defendants chose not to renew Liu's contract, but they did not actively terminate or prematurely cancel it. The language of the letter Liu signed in 2002 states: "Unless you are told otherwise in writing, you should consider June 30, 2003, as your last day of employment."

'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" Ansell v. D'Alesio, 485 F. Supp. 2d 80, 85 (D. Conn. 2007) (citing Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005). "[A]ny constitutionally cognizable property interest in the expectation of continued employment at an educational institution is 'created and defined by the terms of . . . appointment.'" Ciambrello, 292 F.3d at 313 (citing Board of Regents v. Roth, 408 U.S. 564, 578 (1972)).

According to the arbitrator's interpretation of the CBA, in 2002, the defendants should have offered Liu a contract, if at all, for three years, which would have made Liu eligible for the rights of pre-termination notice and "for cause" dismissal procedures. Instead, Liu received and signed a one-year appointment letter, though he knew or should have known that he was entitled to a three-year contract.[5] Liu argues that he is nonetheless entitled to the "for cause" language of the three-

---

[5] Though Liu seems to take issue with the arbitrator's decision regarding his employment status with UCERI, "the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960). Liu did not appeal the arbitrator's decision, and the court finds no reason to disagree with the arbitrator's interpretation of the CBA.

8

year contract provision in the CBA.

The arbitrator found that when Liu accepted the one-year appointment, he waived his right to a three-year contract under Section 13.2, subsection B of the CBA. See Blum v. Schlegel, 18 F.3d 1005, 1016 (2d Cir. 1994) (holding that "Blum waived whatever constitutionally cognizable property interest he might have had in the procedures governing tenure and promotion review" and the terms of Blum's appointment provided him with no expectation that the university would continue his appointment). The CBA makes no reference to "for cause" dismissal procedures until the employee receives a three-year appointment. Therefore, Liu also waived his right to the "for cause" termination language found in that same section, as well as his right to a constitutionally protected property interest in three years of continued employment.

Liu's one-year appointment letter also makes no reference to a "for cause" termination or nonrenewal procedure. Instead, it reflects the beginning and end dates of Liu's employment, and specifically states that "[u]nless you are told otherwise in writing, you should consider June 30, 2003 as your last day of employment." Liu does not dispute the fact that he was never a tenure-track employee. But the cases to which Liu cites for the proposition that he was entitled to "for cause" dismissal procedures involve only tenured employees or employees whose

9

contracts specifically provided that they could be fired only "for cause." See Otero v. Bridgeport Hous. Auth., 297 F.3d 142 (2d Cir. 2002) (holding that because it is undisputed that pursuant to the union agreement with defendant, plaintiff is a public employee who cannot be fired without cause, she is therefore entitled to "the protections of procedural due process"); Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (noting that because plaintiff's union contract guaranteed that he could not be fired without cause, he was entitled to procedural due process). Liu may have expected that the defendants would renew his appointment because they had done so in years past, but a unilateral expectation alone does not establish a property interest that the Constitution will protect.

All property interests that Liu had were defined by the terms of his appointment letter, which specifically provided that Liu's employment would end on June 30, 2003. Nothing in the letter supports Liu's assertion that he was entitled to be dismissed only for cause.

In addition, nothing in Liu's one-year appointment letter provided for specific review procedures for appointment renewal. In fact, the CBA states that "[t]he Board of Trustees . . . shall have the sole jurisdiction over the selection, appointment, . . . termination of service, rank and status of the individual members of the professional staff of the University." When a

governmental entity retains some level of discretion over whether a contract is awarded, an employee does not possess a protected property interest. See Ansell v. D'Alesio, 485 F. Supp. 2d 80, 86 (D. Conn. 2007) (holding that when the Connecticut Judicial Branch had discretionary review of applications for one-year legal services contracts and denied an attorney's application for the renewal of such a contract, the attorney had no constitutionally protected property interest in the contract's renewal).

Accordingly, the court finds that Liu was not entitled to heightened "for cause" dismissal procedures and therefore does not possess a constitutionally cognizable property interest in continued employment at UCERI.

B. Pre-termination Notice and Hearing

The defendants argue that even if Liu had a constitutionally protected property interest in the renewal of his contract, they nonetheless afforded Liu adequate due process in the form of pre-deprivation notice of nonrenewal and a post-deprivation arbitration hearing.

The court recognizes that if Liu had a constitutionally protected property interest, he "may well be entitled to more due process than the procedure under the collective bargaining agreement afforded him." Ciambriello v. County of Nassau, 292

F.3d 307, 323 (2d Cir. 2002). The court will therefore examine the CBA's procedure and the defendants' pre-deprivation actions.

Under the CBA, the grievance procedure afforded Liu a post-deprivation arbitration hearing. In determining whether Liu was entitled to a pre-deprivation hearing, the court uses a three-part test. This inquiry requires the court to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

<u>Harhay v. Town of Ellington Bd. of Educ.</u>, 323 F.3d 206, 213 (2d Cir. 2003) (citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976)). First, the relevant private interest is Liu's continued employment at UCERI. Although the court recognizes that a loss of employment can create financial difficulty, Liu had a full year's notice that his contract might not be renewed, and McFadden confirmed that fact when he sent Liu a letter almost a month before his last day of employment. Moreover, Liu was free

to locate and obtain gainful employment at another university.[6]

Second, there was no risk that the defendants erroneously deprived Liu of continued employment with UCERI. The defendants afforded Liu the opportunity to state his opposition prior to his contract nonrenewal in the form of letters and telephone calls to McFadden, and then they provided Liu with a hearing after nonrenewal, at which Liu was allowed to dispute the defendants' decision not to renew his contract.

Third, additional pre-deprivation process for non-tenured employees would prove to be of little value. Even though Liu was not a tenured employee, the defendants nonetheless allowed him to file a grievance under the CBA and they afforded him an extensive arbitration process in which Liu was able to fully articulate his position on his continued employment with the University. In sum, Liu failed to show that the current grievance process that defendants provide is inadequate. See Radolf v. University of

---

[6] Liu argues that the real reason that the defendants fired him was because he was arrested and charged with larceny at UCERI. The charges, however, were expunged from his record, and Liu does not allege that the defendants publicly sullied his reputation, i.e., he does not allege a "stigma-plus" claim. See Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004)(noting that to prevail on a stigma-plus claim, an employee must show that a government employer made false, defamatory statements about him at the time of his dismissal and made those statements public). Even if he made such an argument, however, it would fail. See Segal v. City of New York, 459 F.3d 207, 214 (2d Cir. 2006) (holding that a non-tenured government employee that alleged a stigma-plus claim was not entitled to a pre-termination hearing to clear her name, and that a post-termination hearing was sufficient).

13

Conn., 364 F. Supp. 2d 204, 213-14 (D. Conn. 2005) (holding that the University's "post-decision procedural safeguards" were adequate to protect the plaintiff's rights and the plaintiff was unable to show that a pre-decision hearing was necessary).

Indeed, the cases Liu cites to support his argument that he should have received a pre-deprivation hearing are inapposite. Loudermill and Todaro, for instance, involved the termination of tenured public employees.[7] Liu admits that he was not on tenure track at UCERI. Thus, he does not possess the same rights as the plaintiffs in either case.

Moreover, the controlling case law supports the defendants' position that even if Liu had a constitutionally protected property interest in continued employment, their pre-nonrenewal notice coupled with the CBA's grievance procedure afforded Liu all the process he was due.

In Harhay, for example, a CBA governed the plaintiff's employment and she took advantage of the CBA's established grievance and arbitration procedure. Harhay, 323 F.3d at 213. There, the Second Circuit reiterated that "[c]ourts have held that such post-deprivation procedures, providing for a hearing to

---

[7] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 535 (1985) (holding that tenured school employees had a constitutionally protected property interest in continued employment); Todaro v. Norat, 112 F.3d 598, 599 (2d Cir. 1997) ("A government entity [is required] to give its tenured employee notice and an opportunity to respond before he is terminated from a public position.").

14

contest a challenged employment decision, are sufficient to satisfy due process." Harhay, 323 F.3d at 213 (citing Narumanchi v. Bd. of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988). See Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 102 (1st Cir. 2002) (holding that pre-deprivation notice and "the full arbitration afforded by the collective-bargaining agreement were more than sufficient to satisfy" due process requirements).

Here, Liu's appointment letter clearly set forth his final date of employment. In addition, McFadden sent Liu a letter almost a month prior to that date, and in it he provided Liu with notice that his contract would not be renewed. Liu then availed himself of the CBA's grievance procedure that included arbitration after his one-year appointment expired. This afforded Liu the opportunity to be heard at a post-deprivation hearing. Accordingly, even if Liu had a constitutionally protected property interest in continued employment at UCERI, the expiration and nonrenewal of Liu's contract did not require additional pre-deprivation process. Liu's claims are without merit.

CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [doc. # 23] is GRANTED.[8]

SO ORDERED this 20th day of August 2007 at Bridgeport, Connecticut.

                                          _____/s/_____
                                          Alan H. Nevas
                                          United States District Judge

---

[8] Though the defendants also raise the defense of qualified immunity and both parties have fully briefed the issue, the court need not address it, because it finds that the defendants did not violate Liu's constitutional rights and the defendants prevail on their motion for summary judgment.